UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAGEL NOSH GROUP, LLC and BAGEL NOSH OF WALDWICK, LLC<br><br>        Plaintiffs,<br><br>    v.<br><br>BAGEL NOSH OF MADISON, LLC, BAGEL NOSH OF MORRIS, LLC, BAGEL NOSH OF SOMERVILLE, LLC, and HUSSAM A. MOAWIAH,<br><br>        Defendants. | Civil Action No. 26-1146<br>(Newark Vicinage)<br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

Bagel Nosh Group, LLC ("Bagel Nosh") and Bagel Nosh of Waldwick, LLC ("BNW"), by way of their undersigned attorney, for their Complaint against Defendant Bagel Nosh of Madison, LLC ("BN Madison"), Defendant Bagel Nosh of Morris, LLC ("BN Morris"), Defendant Bagel Nosh of Somerville, LLC ("BN Somerville"), and Defendant Hussam A. Moawiah ("Moawiah"), allege as follows:

## SUBSTANCE OF THE ACTION

1. This is an action for trademark infringement, false designation of origin and false advertising, common law trademark infringement and unfair competition in violation of the laws of the United States and the State of New Jersey. Plaintiffs seek damages, a permanent injunction, and related relief based on the enforcement of their trademark rights.

## PARTIES

2. Bagel Nosh is a limited liability company formed under the laws of New Jersey.

3. BNW is a limited liability company formed under the laws of New Jersey.

4. Defendant BN Madison was formed under the laws of the state of New Jersey and owns a bagel shop in Madison, New Jersey that improperly uses the Bagel Nosh name.

5. Defendant BN Morris was formed under the laws of the state of New Jersey and owns a bagel shop in Morristown, New Jersey that improperly uses the Bagel Nosh name.

6. Upon information and belief, Defendant BN Somerville was formed on November 26, 2025 under the laws of the state of New Jersey and seeks to open a bagel shop in Somerville, New Jersey.

7. Upon information and belief, Defendant Moawiah resides in Wayne, New Jersey and is the owner of BN Madison, is a partial owner of BN Morris, and is a partial owner of BN Somerville.

## JURISDICTION & VENUE

8. The Court has jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1367. The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a) and under principles of pendent jurisdiction.

9. Venue is proper under 15 U.S.C. §§ 1391(b) and (c), because, upon information and belief, Defendants do business in, have substantial contacts with and/or may be found in the District of New Jersey, and a substantial portion of the events at issue have arisen and will arise in this judicial district.

## BACKGROUND AND FACTS

10. Bagel Nosh is the assignee of the "Bagel Nosh" state and federal trademark rights from Sameal Eli Omar, as assignor (hereinafter "Bagel Nosh Trademarks"), and licenses the use of the Bagel Nosh Trademarks to numerous bagel shops in New Jersey, including BNW, Bagel Nosh of Franklin Lakes, LLC ("BN Franklin Lakes"), and Bagel Nosh of Livingston, LLC ("BN Livingston") (collectively "Licensed Stores"). Mr. Omar is part owner of BNW, BN Franklin Lakes, BN Livingston, and other bagel stores throughout New Jersey. Under the terms of its license agreement, BNW is entitled to directly file suit for trademark infringement against an

infringing third party.

11. Since 1999, BNW has continuously provided restaurant services using the mark "Bagel Nosh" to distinguish its goods and services. Moreover, BN Franklin Lakes since opening in 2006 and BN Livingston since opening 2022 have also provided restaurant services using the mark "Bagel Nosh" to distinguish their goods and services. Since opening, all three of these licensed Bagel Nosh stores have been well known for the quality of their bagels. As a testament to this hard work, BNW has been winner or first runner up in (201) Magazine's "Best of Bergen" for the category of bagels for many years, including from 2021 to 2025. In addition, Plaintiff BNW also routinely wins outright in a tie with BN Franklin Lakes, Bergen Magazine's "Best in Bergen" in the category of bagel stores. Similarly, the quality of its food and service has ensured that BN Livingston is a perennial favorite of Essex County bagel buyers since its opening, *e.g.*, having 140 Uber Eats reviewers give it a 4.8 rating with comments such as "Fantastic bagels from a Boston resident who loves good bagels in NJ!".

12. The Licensed Stores have consistently achieved their customer cult following by focusing their energy on making the best bagels with the best ingredients – which tends to cost more and require higher levels of effort.

13. By virtue of their conduct, Defendants are trying to improperly obtain the significant goodwill built over the years in the Bagel Nosh brand. For example, by having inferior bagel stores using the Bagel Nosh name, Defendants significantly hurt the customer base of Licensed Stores because after people frequent Defendants' establishments, they will have negative feelings towards the "Bagel Nosh" brand without ever knowing these stores are not really "Bagel Nosh" stores. For example, a Yelp! reviewer wrote on December 26, 2025 regarding BN Madison:

> Local shop with a bagel that amounts to a large roll.
> We ordered a couple plain bagels to take home. The bagels had a soft
> crust with no crisp to speak of. Biting into it went straight to the dough,

> which was so fluffy that the bagel fell apart easily. The flavor of the bagel was very plain, lacking in salt or development during the rise.

And, other Yelp! Reviewers wrote the following regarding BN Morris:

> This was my first trip to Bagel Nosh and I decided to get a blueberry bagel to see what it was like. The bagel was of average size and portions of the sample were slightly crispy. I was surprised that it tasted more like a plain bagel and less like a flavored blueberry bagel. If you're looking for a blueberry taste, there are other places in the area that can likely meet your expectations. I always know it's a good bagel place when I wish I had a second bagel. I barely finished this one.
>
> *****
>
> I've never waited this long for a bagel at any New Jersey bagel store! 15+ minutes for a sandwich. The front was disorganized and crowded, with crowds of people waiting in front of the register for their orders and to pay which caused a lot of confusion. Many people waited to place their order unnecessarily because they thought there was a line. This would be very simply fixed by a designated pick-up area.
>
> I was also kind of grossed out by how many baskets of food items (croissants, mini bagels) were on top of the front counter in that crowd, with people coughing and breathing right onto them.
>
> My Taylor Ham, egg and cheese sandwich was perfectly fine, but not as good and chewy as a classic New Jersey bagel. You're definitely getting more of a fast food bagel here.

14. Defendant Moawiah by way of BN Somerville is looking to open another "Bagel Nosh" bagel store in Somerville. This store has not yet opened but upon information and belief is looking to open very soon using the same business process and efforts of Defendant Moawiah's two other stores – which are both inferior to that found in the Licensed Stores.

15. The misappropriation undertaken by Defendants is willful and malicious given Defendant Moawiah – who is an owner in all Defendant bagel stores, for many months was in active negotiations with Mr. Omar to license the Bagel Nosh Trademarks for all his bagel stores. His attempt at opening a new "Bagel Nosh" store in Somerville was done despite Defendant Moawiah's previously admitting his use of the Bagel Nosh name should be licensed.

16. Plaintiffs have no objection with Defendants opening bagel stores. They should, however, come up with their own name for those stores and build goodwill in their own brand for those stores by providing good service and food and not circumvent that process by stealing what was built by others after decades of hard work and dedication.

### Bagel Nosh's Federal, State and Common Law Trademark Rights

17. The registered New Jersey service trademark (Registration No. 27205) was obtained by Mr. Omar on May 7, 2024 for "Bagel Nosh" used in "RESTAURANT SERVICES, NAMELY, PROVIDING OF FOOD AND BEVERAGES FOR CONSUMPTION ON/OFF THE PREMISES" since September 1, 1999. As with all other trademark rights of Mr. Omar, this state trademark registration was assigned by him to Plaintiff Bagel Nosh.

18. Plaintiffs also have the benefit of twenty-seven years of uninterrupted New Jersey common law trademark usage of the mark BAGEL NOSH also assigned by Mr. Omar to Plaintiff Bagel Nosh.

19. On July 10, 2024, the BAGEL NOSH federal trademark application was filed on behalf of Mr. Omar. As set forth in the application, the mark has been used in commerce since 1999.

20. On July 11, 2024, Mr. Omar filed a Petition for Cancellation (Cancellation No. 92085665) against Bagel Nosh Inc. of Gilbert, Arizona ("BN Arizona"). As stated in the Petition and in BN Arizona's Registration, BN Arizona's use of the mark BAGEL NOSH began in May 2017 – 18 years after Mr. Omar's first use of the mark.

21. On January 8, 2025, the USPTO Examining Attorney issued a nonfinal Office Action that included a Section 2(d) refusal based on BN Arizona's Registration No. 5,744,864 for the combined design/word mark BAGEL NOSH.

22. On January 22, 2025, Mr. Omar filed a Response to the Office Action stating: "U.S. Registration No. 5744864 for BAGEL NOSH in stylized characters is currently subject to

a Cancellation Proceeding filed by Mr. Omar (Cancellation No. 92085665). Accordingly, it is requested that the application be suspended pending the results of such proceeding."

23. On January 24, 2025, the Examining Attorney suspended the application pending the results of the Cancellation Proceeding.

24. On January 25, 2024, a Consent Motion for Suspension for Settlement was filed in the Cancellation Proceeding.

25. On March 5, 2025, Mr. Omar voluntarily withdrew his Petition in the Cancellation Proceedings given "the parties have resolved the claims asserted in this proceeding through the execution of a Coexistence and Limited Exclusive License Agreement."

26. On April 17, 2025, the Examining Attorney issued a final Office Action based on a likelihood of confusion with BN Arizona's mark and the need to either add a new class or remove language in one of the two applied-for classes.

27. On April 17, 2025, Mr. Omar filed a Response to the Office Action, that, inter alia, states: "Mr. Omar has attached the Coexistence and Exclusive License Agreement between Mr. Omar and BN Arizona. Based on such agreement, Mr. Omar has an exclusive license in the states of New Jersey and New York to use the mark. Accordingly, the pending application is abandoned to the extent it sought a nationwide right to use the mark and now Mr. Omar only seeks to limit its application to New Jersey and New York. *See e.g.*, *Boi Na Brasa LLC v Terra Sul Corporation a/k/a Churrascaria Boi Na Brasa* (Concurrent Use No 94002525, March 26 2014, precedential)."

28. On April 18, 2025, the Examining Attorney issued a "Subsequent Final Office Action" that "the requirements to amend the identification of goods and services and comply with multiple-class application requirements have been satisfied." In addition, the Examining Attorney repeated his prior Section 2(d) objections and rejected the submitted Coexistence Agreement for the following two reasons: "Mr. Omar has attempted to overcome this refusal by submitting a copy of an agreement between the applicant and the owner of the cited registration.

See April 17, 2025 Response. This agreement does not include registrant's consent to registration of the applied-for mark; thus, the agreement is insufficient to overcome this refusal. See TMEP §1207.01(d)(viii). Moreover, the provided agreement states that applicant "shall abandon [U.S. Serial No. 98642438]". See April 17, 2025 Response at 5. For those reasons, this refusal is maintained."

29. On June 10, 2025, Mr. Omar's legal counsel sent an email to the Examining Attorney seeking feedback regarding the requested amendments to the signed Coexistence Agreement. Specifically, the email asks the Examining Attorney for clarification regarding his April 18, 2025 position: "Your Final Office Action states that "[t]his agreement does not include registrant's consent to registration of the applied-for mark; thus, the agreement is insufficient to overcome this refusal." In an effort to overcome this objection, the parties are negotiating an amendment to their agreement. Rather than do things in piecemeal fashion, it would be appreciated if you reviewed the below language to let me know if this would satisfy your concerns."

30. The Examining Attorney did not respond to this email inquiry.

31. Given the time to respond to the April 18, 2025 Office Action was fast approaching, Mr. Omar on July 10, 2025 provided the Examining Attorney with the fully-executed amendment to the Coexistence Agreement having the same language provided to the Examining Attorney one month earlier.

32. On July 31, 2025, Mr. Omar received the following automated email from the USPTO: "TRADEMARK APPLICATION ABANDONED RESPONSE DOES NOT MEET REQUIREMENTS."

33. On August 5, 2025, Mr. Omar filed a Petition with the USPTO Director given that the Examining Attorney should have registered his mark with concurrent use in the states of New Jersey and New York under 15 U.S. Code § 1052(d). As set forth in the Petition, the concurrent rights pertinent to the application were adjudicated between the parties themselves as part of the

settlement of Mr. Omar's Cancellation Proceeding and should not have been ignored by the Examining Attorney.  On January 5, 2026, the Petition was assigned to an attorney of the Office of Petitions.  As of the filing of this suit, no response has yet been received from the USPTO.

34. On February 20, 2025 and as amended on June 17, 2025, BN Arizona granted Mr. Omar with an exclusive license to the federally registered word mark available under BN Arizona's Registration No. 5,744,864 for all of Mr. Omar's bagel shops, including the Licensed Stores.  Accordingly, no matter what happens in the USPTO, Plaintiffs have the benefit of a license agreement with BN Arizona that provides for an exclusive license in New Jersey and New York for the use of the federally registered trademark of BN Arizona ("BN Arizona Agreement").

35. As permitted under the BN Arizona Agreement, Mr. Omar's exclusive New Jersey license was assigned to Plaintiff Bagel Nosh and now allows for the prosecution of the federal trademark claims brought in this action.

## COUNT I
## TRADEMARK INFRINGEMENT AS TO ALL DEFENDANTS

36. Plaintiffs repeat and reallege each of the allegations contained in paragraph 1 through 35 of this Complaint with the same force and effect as if fully set forth herein.

37. At all times relevant hereto, Defendants' bagel shops have been selling bagels and other foodstuff in New Jersey restaurants using the BAGEL NOSH trademark of Plaintiffs.  Such goods were offered for sale within this judicial district with full knowledge that the goods would be consumed within the judicial district.

38. The Bagel Nosh brand has acquired value and recognition in New Jersey.  The Bagel Nosh mark is known to the consuming public as identifying and distinguishing Bagel Nosh exclusively and uniquely as the source and origin of the goods to which the mark is applied.

39. Upon information and belief, Defendant Moawiah owns and/or controls

Defendants BN Madison, BN Morris, and BN Somerville and such Defendants are the alter ego of Defendant Moawiah. Upon further information and belief, Defendant Moawiah has always had relevant to this action, the ability to control and supervise the activities of such Defendants and has exerted such control.

40. The acts of Defendants in offering for sale and/or selling in interstate commerce goods using the Bagel Nosh name: (a) cause, or are likely to cause, confusion and mistake among the consuming public that the foodstuff sold by Defendants were sold or sanctioned by Plaintiffs, (b) are likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association of Defendants with Plaintiffs, (c) are likely to cause confusion and mistake among the consuming public that said goods are being offered to the consuming public with the sponsorship or approval of Plaintiffs, and/or (d) have caused and are likely to cause dilution of the distinctive quality of the Bagel Nosh Trademarks.

41. Defendants advertised and offered for sale and/or sold goods knowing the goods bore infringements of the Bagel Nosh Trademarks. Defendants engaged in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of said goods and to gain from Defendants the benefit of the goodwill associated with the Bagel Nosh Trademarks. The acts of Defendants are also likely to dilute, and have diluted, the distinctive quality of the Bagel Nosh Trademarks

42. Defendants' use of the Bagel Nosh Trademarks without Bagel Nosh's consent constitutes infringement in violation of 15 U.S.C. § 1114, in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public.

43. Such conduct on the part of Defendants, including by way of the opening of a new bagel shop by BN Somerville, has injured Plaintiffs in an amount to be determined at trial and has caused and threatens to cause irreparable injury for which Plaintiffs have no adequate remedy at law.

## COUNT IV

### FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTIZING AS TO ALL DEFENDANTS

44. Plaintiffs repeat and reallege each of the allegations contained in paragraph 1 through 43 of this Complaint with the same force and effect as if fully set forth herein.

45. Defendants' use of the Bagel Nosh Trademarks without Plaintiff Bagel Nosh's consent constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact and/or false advertising in commercial advertising or promotion, in violation of 15 U.S.C. § 1125(a), in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public as to the source, approval or sponsorship of Defendants' bagel stores.

46. Such conduct on the part of Defendants, including by way of the opening of a new bagel shop by BN Somerville, has injured Plaintiffs in an amount to be determined at trial and has caused and threatens to cause irreparable injury for which Plaintiffs have no adequate remedy at law.

## COUNT V

### COMMON LAW TRADEMARK INFRINGEMENT AS TO ALL DEFENDANTS UNDER N.J.S.A. § 56:3-13.16A

47. Plaintiffs repeat and reallege each of the allegations contained in paragraph 1 through 46 of this Complaint with the same force and effect as if fully set forth herein.

48. N.J.S.A. 56:3-13.16a authorizes common law trademark owners to sue a defendant for using a mark "without consent of the owner."

49. The acts of Defendants in using the Bagel Nosh Trademarks without the consent of Plaintiffs constitutes trademark infringement in violation of the common law of New Jersey.

50. Such conduct on the part of Defendants, including by way of the opening of a new bagel shop by BN Somerville, has injured Plaintiffs in an amount to be determined at trial and has caused and threatens to cause irreparable injury for which Plaintiffs have no adequate

remedy at law.

## COUNT VI

### DILUTION UNDER N.J.S.A. § 56:3-13.20
### AS TO ALL DEFENDANTS

51. Plaintiffs repeat and reallege each of the allegations contained in paragraph 1 through 50 of this Complaint with the same force and effect as if fully set forth herein.

52. Defendants, without authority from Plaintiffs, willfully used unauthorized reproductions of the Bagel Nosh Trademarks and thereby caused, and are causing, the actual dilution of the distinctive qualities of the Bagel Nosh Trademarks.

53. The acts of Defendants constitute trademark dilution in violation of N.J.S.A. § 56:3-13.20.

54. Such conduct on the part of Defendants, including by way of the opening of a new bagel shop by BN Somerville, has injured Plaintiffs in an amount to be determined at trial and has caused and threatens to cause irreparable injury for which Plaintiffs have no adequate remedy at law.

## COUNT VIII

### UNFAIR COMPETITION UNDER N.J.S.A. § 56:4-1
### AS TO ALL DEFENDANTS

55. Plaintiffs repeat and reallege each of the allegations contained in paragraph 1 through 54 of this Complaint with the same force and effect as if fully set forth herein.

56. The acts of Defendants constitute unfair competition in violation of N.J.S.A. § 56:4-1.

57. Such conduct on the part of Defendants, including by way of the opening of a new bagel shop by BN Somerville, has injured Plaintiffs in an amount to be determined at trial and has caused and threatens to cause irreparable injury for which Plaintiffs have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

A.  An order preliminarily and permanently enjoining Defendants, their employees, agents, licensees, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with any of them, including any entities controlled in whole or in part by any of the Defendants or their parents in the future, from: (i) imitating, copying or making unauthorized use of the Bagel Nosh Trademarks; (ii) offering for sale, advertising, promoting or displaying any goods using the Bagel Nosh Trademarks; (iii) engaging in any other activity, including but not limited to the use of keyword domains using the mark or manipulating online search rankings utilizing Bagel Nosh Trademarks, constituting unfair competition with Plaintiffs or constituting an infringement of the Bagel Nosh Trademarks or of Bagel Nosh's rights in, or its right to use or exploit such trademarks, or constituting dilution of the Bagel Nosh Trademarks, and the reputation and the goodwill associated therewith; (iv) making any statement or representation whatsoever, with respect to the infringing goods in issue, that falsely designates the origin of the goods as those of Bagel Nosh, or that is false or misleading with respect to Bagel Nosh; and (v) engaging in any other activity, including the effectuation of assignments or transfers of its interests in unauthorized colorable imitations of the Bagel Nosh Trademarks, the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purposes of circumventing, evading, or avoiding or otherwise violating the prohibitions set forth in subsections A(i) through A(v) above.

B.  An award of all profits realized by Defendants by virtue of their wrongful acts and directing that such profits be trebled due to Defendants' willful or willfully blind actions.

C.  An award of punitive damages against Defendants.

D.  An award of costs in this civil action, including reasonable attorneys' fees and expenses, investigatory fees, and pre-judgment interest.

E. An order providing that the Court retains jurisdiction of this action enabling Plaintiffs to apply to the Court at any time for such further order, including any order interpreting, modifying or enforcing compliance with a prior order or providing for punishment for the violation of any order.

F. An order granting to Plaintiffs such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38 (b), Plaintiffs hereby demand a trial by jury on all issues.

DATED:  February 4, 2026                                  Respectfully submitted,

Paul E. Paray, Esq.

By: /s/ Paul E. Paray
Paul E. Paray
65 Harristown Road, Suite 208
Glen Rock, NJ 07452
(201) 281-5134
paulp@paraylaw.com
Counsel for Plaintiffs
Bagel Nosh Group, LLC and
Bagel Nosh of Waldwick, LLC